**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

EDISYNC SYSTEMS, LLC,

    Plaintiff,

v.

ADOBE SYSTEMS, INC.,

    Defendant.

---

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
AND DEMAND FOR TRIAL BY JURY**

---

Plaintiff, EdiSync Systems, LLC ("EdiSync"), by and through its undersigned counsel, for its Complaint for Damages and Injunctive Relief against Defendant Adobe Systems, Inc. ("Adobe") states as follows.

**INTRODUCTION**

1. In the late 1980s, John R. Klug, the founder of EdiSync, invented a remote multiple user editing system and method. This system facilitates real-time collaboration from remote locations by providing the data that a user changes while editing a computer file substantially simultaneously to a remote user's display device.

2. Defendant Adobe makes, uses and sells and/or exports services and/or software applications, and/or components thereof, which utilize the same technology - sending real-time screen updates to remote users' displays as inputs are entered. In short, using Adobe's software, inputs are displayed substantially simultaneously with their execution on a collaborating remote

1

user's device.  Adobe's provision and use of these collaborative features in its application serving and/or Web portal applications infringes U.S. Patent No. 5,799,320 (the "'320 Patent") which has been assigned to EdiSync.  EdiSync seeks an injunction and damages for Adobe's infringement of EdiSync's patented technology.

## THE PARTIES

3. EdiSync is a limited liability company organized and existing under the laws of the state of Colorado, with its principal offices located at 2552 East Alameda Avenue, Polo Club North No. 115, Denver, Colorado 80209.  EdiSync is a Colorado-based developer and marketer of intellectual property assets used in the computer, telecommunications, Internet and collaborative information distribution fields.

4. Upon information and belief, defendant Adobe Systems, Inc. is a public company organized and existing under the laws of the state of Delaware, with its principal offices located at 345 Park Avenue, San Jose, California 95110-2704.  Adobe is a leading provider of integrated enterprise software solutions and services for the delivery of all forms of live eLearning and business collaboration including spontaneous meetings, large-scale online presentations, virtual classrooms, content management, personalized eLearning, webinars and content authoring.  More specifically, Adobe designed, manufactures and markets, directly and through its business affiliates, computer software applications, components thereof and related services that enable multiple persons to collaborate on computer files.  Adobe offers to sell and sells software, components thereof and/or services throughout the United States, including in this judicial district.

## JURISDICTION AND VENUE

5.  This is an action for infringement of a United States patent. Accordingly, this action arises under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*, including 35 U.S.C. §§ 271 and 281, and subject matter jurisdiction is properly based on 28 U.S.C. §§ 1331 and 1338.

6.  This Court has personal jurisdiction over Adobe.

7.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400(b).

## FACTUAL BACKGROUND

**The Invention of the Remote Multiple-User Editing System and Method**

8.  In the late 1980s, John R. Klug was the owner of a small business that specialized in producing newsletters, such as those commonly found in mailings of bank statements. In order to produce these newsletters, collaboration under tight deadlines was required between persons located in different cities (for example, a customer in Kansas City, a marketing consultant in San Francisco and one of Mr. Klug's editors in Colorado). This collaboration was conducted without the benefit of e-mail, instant messaging, video conferencing, Web conferencing, Microsoft's NetMeeting® application or many of the modern telecommunication systems available today.

9.  In the mid-1980s, the first Macintosh and IBM desktop computers came into existence. These devices, collectively referred to as personal computers ("PCs"), increased the efficiency of generating newsletters and revising the text, graphics and other information provided in a computer file associated with the newsletter. However, at that time, PCs did not enable multiple persons to collaborate in substantially real time on a computer file.

10.     Due to the number of disparately located parties and the limitations of then-available technology, producing newsletters often required one of Mr. Klug's editors to receive a "marked-up" hard copy of a proposed newsletter (*e.g.*, from a marketing consultant) showing suggested changes to the newsletter. The "marked-up" version was provided to the editor commonly via regular U.S. mail, fax or, in the late 1980s, by sending an *entire* computer file over a telecommunications link. Sending a simple text-only file at that time using a 2.4 – 4.8 Kbps dial-up modem connection (which was the prevalent dial-up modem data transfer rate at that time), would have taken several minutes. Files involving graphical data often took hours to transmit. Most of the newsletters Mr. Klug produced involved graphics. Regardless of the communications medium utilized, receiving, revising, communicating and collaborating with others to produce a final newsletter was a slow and inefficient process.

11.     Although the speed at which data could be transferred increased over time through the advent of ISDN, 9.6Kbps dial-up modems, interconnected local area networks (which were later called the "Internet"), wide area networks and similar communication mediums, these advances did not significantly enhance Mr. Klug's editor's ability to collaborate substantially simultaneously on a computer file with remote customers. The systems and methods then available still required *entire* files to be communicated, at great expense in time and resources.

12.     Further, other systems and methods then available were not capable of providing the desired substantially real-time multiple user remote editing capabilities. Rather, the then available systems typically supported only one specific platform (*e.g.*, Macintosh computers) and attempted to facilitate collaboration by communicating screen bit changes on a line-by-line basis, for an entire screen, to a single remote user's computer.

4

13. Moreover, such systems physically used a network tree topology, wherein a first cluster of user devices were connected via a linear bus to a second cluster of user devices. As generally discussed by Mr. Klug in the background section of the '320 Patent, the then available systems provided, at best, a host-to-one-to-many system which was inherently limited in actual operation. For example, the host-to-one-to-many system topology, in effect, provided a system that was not capable of true collaboration, because the highest transmission speed obtainable during any session, which involved more than one remote user, was limited by the connections and processing speed of the host and/or the "one" computers. For example, if "one" user in Los Angeles had only a 2.4Kbps connection to a "host" computer located in Denver, then each of the "many" users connected to the "one" Los Angeles user could receive information from the host computer at a transmission speed no greater than 2.4 Kbps.

14. As a result of these and other limitations, Mr. Klug decided that the then available methods were too slow and cumbersome and did not support real-time collaboration. Mr. Klug was unable to identify any then available method that could satisfy his need to communicate screen updates to remote users' displays in substantially real-time in order to facilitate collaboration.

15. In 1989, Mr. Klug invented a system and method that solved this problem. Mr. Klug's invention facilitated collaboration and multiple-user file editing, even if the users were remotely located, for example, in different buildings or cities. The invention, coupled with then state of the art computing devices (such as PCs, modems and "high-speed" communication mediums (such as ISDN)), allowed substantially simultaneous collaboration in editing a computer file by having users and their devices communicate only screen updates as opposed to entire files.

**Prosecution of Mr. Klug's Invention Before the U.S. Patent & Trademark Office**

16. On August 23, 1989, Mr. Klug filed an application for a United States patent, which was assigned U.S. patent application serial number 397,996 by the United State Patent and Trademark Office "USPTO" (hereinafter, the "'996 application").

17. During prosecution before the USPTO, the claims in the '996 application were rejected in two Office actions. After the second and final rejection, and while the '996 application was still pending, Mr. Klug filed a continuation application on November 12, 1992, claiming priority to the August 23, 1989 filing date for the '996 application. This continuation application was assigned U.S. patent application serial number 975,905 (hereinafter, the "'905 application") and incorporated by reference all of the subject matter originally disclosed in the '996 application.

18. The '905 application was rejected in three additional Office actions. The third rejection (*i.e.*, the fifth overall) was made final and, on November 7, 1994, Mr. Klug appealed this fifth and final Office Action to the Board of Appeals for the USPTO.

19. On December 4, 1997 (*i.e.*, approximately eight years and four months after the '996 application was originally filed), the three-judge Appeals Board panel unanimously reversed the Examiner's rejections and found, with respect to all of the then pending claims in the '905 application, that the Examiner had failed to set forth a prima facie case of unpatentability.

20. On August 25, 1998, based upon the '905 application, Mr. Klug was awarded United States Letters Patent No. 5,799,320 (hereinafter, the "'320 patent"), entitled "Remote Multiple-User Editing System and Method." EdiSync is the owner by assignment of the '320 patent.

21.     Among other things, Mr. Klug's invention, as set forth in the '320 patent, essentially provides systems and methods in which screen updates are communicated to another node (*e.g.*, another person's client device) on a network substantially simultaneously with inputs to a given computer file.  This substantially simultaneous presentation of data on the remote clients' device is accomplished by sending screen updates to the displays of remote clients' devices.  Contrary to teachings then existing at the time of Mr. Klug's conception of his invention, in which line-by-line bit map comparisons and/or vector graphic representations for an entire display screen were communicated across a network, Mr. Klug conceived and invented a system that provides for the substantially real-time communication of those display updates that correspond with and are limited to the editing occurring on a file using a single user application program hosted by one of the personal computers.  This communication of information to the remote displays that corresponded to and is limited to the file editing then occurring was later described as "file information."  Mr. Klug's discovery and invention of sending "file information" versus the countervailing teachings of sending an entire screen image of information or changes thereto (which was also later coined as, "image information"), enables one or more users to edit a file at substantially the same time and see the results of such editing substantially real-time.

22.     Mr. Klug's invention solved the long-felt need of providing multiple users with the ability to collaborate in substantially real time on computer files.  Using Mr. Klug's invention, sending screen updates that correspond to and are limited to the file information being edited substantially simultaneously with the input thereof reduced the amount of data that needs to be transmitted at any given time during a collaborative session.  Also, Mr. Klug's invention enabled project members (*e.g.*, computer file users) to collaborate in substantially real time, regardless of

7

where they were located, the type of network or interconnecting medium utilized, the type of data contained in a computer file, the number of users involved, the type of client devices utilized, and/or the slowest connectivity speed of any given user.

23. While prosecuting his patent applications before the USPTO, Mr. Klug sought to capitalize upon his invention. While diligently prosecuting the '996 application before the USPTO and the Appeals Board, however, others in this industry were also actively marketing and developing competing systems. Initially, Mr. Klug capitalized upon his invention by initiating lawsuits in 2003 against Citrix Systems, Inc., Raindance Communications, Inc., Genesys Conferencing, Inc., and Centra Software, Inc. The matters against Citrix, Raindance and Genesys were quickly resolved. Centra, however, initiated two seriatim reexaminations of the '320 patent before the USPTO. The result of both those proceedings was that the USPTO confirmed the validity of the patents after the entry of two clarifying amendments.

24. Specifically, in 2004, Centra sought and was granted a reexamination of the '320 patent by the USPTO (hereafter, the "First Reexamination"). During the pendency of this First Reexamination, the granted claims in the '320 patent were examined in view of many references, including an article by Sunil Sarin ("Sarin") which taught, amongst other things, a screen sharing application by which bit-map comparisons for an entire screen, between prior and later bit-maps, were used to identify changes to the present bit map and such changes were then communicated to at least one remotely conferenced PC. As the USPTO came to realize, during a Sarin conference, each conferee is always presented with the same, identical screen image display and changes to any portion of the screen display are communicated to all conferees. In contrast, EdiSync argued and the USPTO agreed that the '320 patent's claims recite that data

8

"corresponding with and limited to" the file editing operations is communicated substantially real-time and that Sarin and the other prior art of record did not teach at least this limitation. That is, each of the claims in the '320 patent were found to be patentable over Sarin's "screen sharing" teachings and Sarin's other teachings. The claims were also clarified, by a corresponding amendment, to recite that the edits to the file communicated substantially real time to remote personal computer displays correspond to the editing of a file being executed by a single user application program. On April 28, 2009 the claims in the '320 patent were reissued as U.S. Patent No. 5,799,320 C1.

25.   Upon exiting from the First Reexamination in 2009, with a confirmation from the USPTO of the patentability of Mr. Klug's invention, shortly thereafter on June 10, 2009, a second reexamination of the '320 patent was requested (hereafter, the "Second Reexamination"). During the Second Reexamination, prior art references were again asserted against the '320 Patent. Of particular interest to the USPTO was the Bartholomew patent (U.S. Patent No. 4,939,590) which, like Sarin, teaches the sending of screen updates that are determined on an entire screen display basis to remote personal computers. Yet again, the claims in the '320 patent were confirmed by the USPTO as being patentable over screen sharing technologies because such technologies did not teach the sending of data "corresponding with and limited to" the file editing operations. To further clarify the already established difference between the sending of a display-wide set of display changes (as taught by Sarin, Bartholomew and other prior art references considered during the original prosecution, the First Reexamination and during the Second Reexamination) and Mr. Klug's invention of sending, to the conferencing remote PC's displays components, data that corresponds with and is limited to the file editing operations, the claims were amended.

Specifically, the claims were clarified to recite that the information communicated by Mr. Klug's invention was received from the single user application program, whose contents were then being collaboratively edited, i.e., the data communicated substantially real time to the remote displays corresponds with and is limited to the on-going file editing operations, as originally recited in the '320 patent as issued in 1998. On October 4, 2011, the USPTO again confirmed the patentability of Mr. Klug's invention and again reissued the '320 patent as U.S. Patent No. 5,799,320 C2.

**Adobe's Infringing Conduct**

26. Adobe's software applications and services can be used to provide substantially real-time collaboration by remote users on a computer file. Long known for Photoshop, Creative Suite and its Acrobat / PDF file formats, Adobe entered the web conferencing and collaboration industry as of at least 2005 when it began offering a software product and/or service called Adobe Connect.

27. Upon information and belief, during an Adobe Connect session, a leader may host, present and share a computer file (for example, a legal brief) with one or more remote users. Such hosting is provided by establishing connections between the leader's personal computer with an Adobe server and the remote users' personal computers which are also connected to the Adobe server via the Internet. Using application sharing capabilities provided by the Adobe server, the leader and remote users may collaboratively edit the computer file (*i.e.*, the brief) by sharing a software application, such as Microsoft Word®, resident on any one of the attendee's personal computer. The Adobe server thus enables the host and remote users to access the computer file, input edits to the file and view the changes to the file in substantially real-time. In

effect, the Adobe server enables remote users to view and edit the computer file (*i.e.,* collaborate) as if the application was resident on their own personal computer.

28.   The features of Adobe Connect described in paragraph 27 are the same as the inventions claimed in the '320 patent.

29.   Upon information and belief, since at least 2005, Adobe has been making, using, selling, offering for sell, exporting and/or continuing to make, use, sell, offer for sale and/or export software products, components thereof and/or services, wherein such components are not a staple or commodity of commerce, which support the collaborative features and functions described in paragraph 27.  These software products and/or services include, but are not limited to:  Adobe Connect, Adobe Connect 7, Adobe Connect 8, Adobe Connect 9, Connect Mobile, and ConnectNow.

30.   Upon information and belief, Adobe supplies the software products, components thereof and/or services identified in paragraphs 29 to one or customers and/or one or more data centers located outside the territory of the United States and wherein such data centers and/or customers utilized such Adobe products, components thereof and/or services to facilitate the above mentioned collaboration features and functions by one or more entities located inside and/or outside the United States.

31.   Upon information and belief, Adobe provides one or more components of the software products and/or services identified in paragraph 29 to one or more third party foreign customers, who install such components onto their employee's computers and thereby facilitate the above mentioned collaboration features and functions.

32. Absent Adobe's providing of the software components to the foreign customers, the foreign customer's employees would not be able to utilize the above mentioned collaboration features invented and patented by Mr. Klug.

33. Upon information and belief, through one or more of these products, components thereof and/or services Adobe directly infringes, contributes to the infringement of and/or induces others to utilize software products, components thereof and/or services which provide the above mentioned collaboration features and functions and thereby infringes one or more claims of the '320 patent.

## FIRST CLAIM FOR RELIEF
**Infringement of the '320 Patent**

34. EdiSync incorporates by reference the allegations set forth in paragraphs 1 to 33 of this Complaint as though set forth fully herein.

35. EdiSync is the sole owner of the '320 patent and has the exclusive right to exclude others and to recover damages for infringement of the claims thereof.

36. Adobe has made, distributed, used, exported, offered to sell and sold and continues to make, use, export, offer to sell, and sell software products and/or services, and/or components thereof, which support collaboration features and functions. In doing so, Adobe and its software products, components thereof and/or services infringe the claims of the '320 patent, contribute to the infringement of the claims of the '320 patent, and/or induce others to infringe the claims of the '320 patent in violation of 35 U.S.C. § 271.

37. EdiSync has been and will continue to be damaged by Adobe's infringement of the '320 patent.

38. EdiSync does not have an adequate remedy at law, and Adobe will continue to infringe the '320 patent unless preliminarily and permanently enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE EdiSync respectfully requests that this Court enter an Order:

A. Declaring that Adobe has infringed the '320 patent;

B. Preliminarily and permanently enjoining Adobe, its officers, directors, employees, agents, affiliates, subsidiaries, parents, successors, representatives, and all persons acting or claiming to act on behalf of Adobe or under Adobe's direction, from directly or contributorily infringing, or inducing infringement of the '320 patent, including but not limited to an Order requiring:

    1. Adobe to cease using, selling and/or providing products, components thereof and services which support collaboration including, but not limited to, Adobe Connect, Adobe Connect 7, Adobe Connect 8, Adobe Connect 9, Connect Mobile, and ConnectNow; and

    2. Adobe to recall for destruction all infringing software products and components thereof (including, but not limited to Java applets) from all distributors, dealers, value added resellers, retailers and customers to whom it has directly or indirectly delivered the software products;

C. Entering judgment in favor of EdiSync and against Adobe for damages pursuant to 35 U.S.C. § 284 in an amount to be determined at trial, but in no event less than a reasonable royalty for infringement of the '320 patent;

D.     Entering judgment in favor of EdiSync and against Adobe for pre-judgment interest and costs, as provided by law;

E.     Entering judgment in favor of EdiSync and against Adobe for EdiSync's reasonable costs and attorneys' fees, as provided by law;

F.     Awarding such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, EdiSync Systems, LLC hereby demands a trial by jury of all issues so triable.

Dated this 21st day of August, 2012.

> s/ Tucker K. Trautman
> Tucker K. Trautman
> Gregory S. Tamkin
> John T. Kennedy
> DORSEY & WHITNEY LLP
> 1400 Wewatta Street, Suite 400
> Denver, CO  80202
> Telephone: 303-629-3400
> Email: trautman.tucker@dorsey.com
> Email: tamkin.greg@dorsey.com
> Email: kennedy.john@dorsey.com
> **Attorneys for Plaintiff EdiSync Systems, LLC**

Plaintiff's Address:
EdiSync Systems, LLC
Polo Club North No. 115
2552 East Alameda Avenue
Denver, CO 80209